No. 29.—JEHU CLARK and others, plaintiffs in error, *vs.* CHARLES CLEGHORN, defendant.

[1.] Where a bill was filed to rescind a contract for the sale of land by the vendee, on the ground that the title is incumbered with a judgment lien, the vendee having a deed with covenants of warranty: *Held*, that the allegation that the vendor resided without the limits of the State, and had no property therein, was sufficient to retain the complainant's bill in Court.

[2.] Where the answer of the defendants plainly and distinctly denies the facts and circumstances upon which the equity of the bill is based, as a general rule, the injunction will be dissolved.

In Equity, in Muscogee Superior Court; demurrer and motion to dissolve injunction. Decided by Judge ALEXANDER.

Charles Cleghorn filed his bill on the Equity side of the Superior Court of Muscogee County, charging that about the 12th of May, 1846, he bought from Jehu Clark, now of the State of Tennessee, a certain parcel or lot of land in the City of Columbus, commencing at the corner of Warren and Franklin streets, running along Franklin street forty-two feet, thence due south ninety feet, thence due west to Warren street, and thence to the beginning corner, for the sum of $3000, and received from said Clark a deed of conveyance and possession; that he had paid about $2000, leaving three notes still due, one for $192, payable 25th December, 1846, to Augustus Brown or bearer, one for $500, to

said Clark or bearer, and one for $400, payable to Thomas Morris or bearer. The bill states that although the two notes were not payable to Clark, nevertheless they were given to him and in payment for the land aforesaid, and that Brown and Morris knew this when they first became holders of them; that each of said payees have commenced suit on said notes severally, which suits are now pending, on appeal, in the Superior Court of said County.

The bill farther charges, that some years probably prior to 1840, the said premises were granted by the State to John Warren; that he is informed and believes that said Thomas Morris had a joint interest in the whole or a part of said lot; that afterwards one James Rousseau agreed to purchase the land from Warren and Morris, one or both, for a price unknown, and took from Warren a bond to make titles when the purchase money was paid; that afterwards Rousseau assigned the bond to one Nathaniel H. Woods as security for money borrowed by Rousseau of Woods; that Woods paid the money to Warren, which was subsequently repaid to him by Rousseau; and that Woods, as the agent of Rousseau, ordered Warren to make the title to Clark about 15th January, 1846, who paid Rousseau therefor at that time certain notes on one William Perry.

The bill farther charges, that some time in 1847, several *fi. fas.* amounting to a large amount on judgments, dated in 1842, levied on said land as the property of Rousseau, and others to a large amount were ready to be levied; that complainant has interposed his claim, but fears he shall lose the same.

The bill charges that the land is valuable to complainant only in a body, and that he would not have purchased had he not expected to get a good title to the whole, and that even if he could sustain his title to one half, the same would be rendered valueless without the remainder; that when he purchased from Clark, he had no notice that the land ever was owned by said Rousseau, or of the claim of Morris; and that Clark now resides out of the State, and has no property within the State.

The bill, as amended, farther charges, that Brown is the father-in-law of Rousseau, and never had any interest in the land, and was put forward merely to deceive Rousseau's creditors, and that the notes given by Clark to Brown went immediately to Rousseau.

The bill prayed an injunction of the suits in favor of Clark, Morris and Brown against complainant, until the judgments against Rousseau are paid off or annulled, or that said notes be delivered up to be cancelled, and Clark decreed to refund the money already paid, at which time the complainant would return the land to Clark.

Morris, in his separate answer, admits the sale from Clark to Cleghorn, (complainant,) the payment of the money, and that Warren had title, under grant from the State to himself, or himself and one H. S. Smith, and that defendant purchased the interest from Smith; that defendant, Warren, and Judge Thomas, who was also interested, sold to Rousseau about one half of said lot, on a credit, and gave a bond from defendant and Warren to Rousseau; that he has been informed, that by some arrangement between Woods and Rousseau, that Woods paid the purchase money; that in a division of the Warren street property between Warren, Thomas and Morris, the balance of this lot fell to the share of Morris, (defendant,) who subsequently sold it to Rousseau, who failing to pay for the same, the contract was rescinded, and on 14th January, 1846, he sold it to Jehu Clark for $650— $250 in cash, and his note for the balance, ($400,) payable 1st December, 1846; that Clark having purchased the balance of the lot, took a deed from Warren to the whole lot, Clark giving at the same time to this defendant a lien on the lot for the purchase money; that when Clark sold to Cleghorn, upon application of Clark, defendant gave up Clark's note for $400, and Cleghorn gave his note for the same, which note is the one now sued on. He admits that Brown, or some other person, sold a part of said lot to Clark for $1,900, to wit: the twenty feet in front on Warren street, but denies that transaction had any thing to do with the balance of the lot sold by defendant to Clark. He admits that Cleghorn had paid Clark $2000, and farther admits, that the land has been levied on as the property of Rousseau, and been claimed by Cleghorn.

The amended answer alleges, that when Cleghorn made the note to defendant, Morris, for $400, he was notified that it was in lieu of Clark's note for that amount, given for the purchase of said portion of said lot of land, which complainant knew had no connection with the balance of the lot. He admits the portion sold by him is not as valuable as the other, as the other bounds upon

Clark and others *vs.* Cleghorn.

the street, and is improved with tenements, whereas the part sold by defendant lies in the rear, and is unimproved.

The answer of Jehu Clark denied any trust, and confirmed that of Morris, where the facts came within the knowledge of each. He admits that Warren made him a deed to the whole lot, for one half of which he contracted with Morris, and for the other half he contracted with Augustus Brown, with the understanding and belief, at the time, that Morris was the rightful owner of one portion of said land, and Brown the rightful owner of the other. Morris made him a deed. He is not certain whether Brown did or not. He denies ever having any thing to do with Rousseau, nor did he then or now believe that Rousseau had any interest in the said lot; on the contrary, Morris informed him he had once sold his interest to Rousseau, but the contract had been rescinded, nor did he know that Rousseau had any interest in said land when he bought, or when he sold to Cleghorn, either an equitable or legal interest; and he insisted that he was an innocent purchaser for a valuable consideration without notice, and as such should be protected. He did purchase that portion of the land from Brown, and let him have the notes on William Perry, and the note for $192, as he recollects, was made payable to Brown, to lift a note of the same size, which respondent still owed Brown on said purchase. He denied concealing the defect in the title from Cleghorn, for if defective he did not know it himself, nor does he now believe it to be defective, nor did complainant ever complain of any defect until the filing of his bill, although he did complain of his bargain. He denies that the loss of a part of the lot would render the other valueless, and rather intimated that the complainant was colluding with others to defraud respondents and get the land at a less price.

The defendants demurred to said bill for want of equity, and upon the coming in of the answers, made separate motions to dissolve the injunction, which demurrer and motions to dissolve came on to be heard together, by consent.

The Court overruled the demurrer, and refused to dissolve the injunction, which decisions were excepted to and are here assigned as erroneous.

Jas. Johnson and G. E. Thomas, for plaintiffs in error.

There is no equity in the bill:

1. Because the complainant in the bill shows that he himself has title unincumbered, by putting in his claim.

2. Because he shows that he has not yet exhausted his legal *remedy*, and because he alleges his fears and apprehension, and not facts. *McGough & Crews vs. Insurance Bank et al.* 2 *Kelly*, 151.

3. Because the contract is executed, and complainant has provided for the contingency of a failure, by taking a deed of conveyance, with covenants, and because his remedy at Law is ample and complete. 2 *Sugden*, 421. 3 *Edwards*, 77, 37. 5 *Paige*, 307. 2 *Hilliard on Real Property*, 388. 4 *Alabama N. S.* 28.

4. Because Cleghorn must do equity before he asks equity, and restore, or offer to restore, the possession.

The injunction should have been dissolved, because the answer of Morris swears off the equity of the bill.

1. That it is shown that Rousseau never had a bond for the twenty-two feet sold by Morris, and complainant knew that fact.

2. Because the consideration of the note held by Morris is not to secure the purchase money of land.

3. Because if it were so, Morris, before a rescission is had, should be placed in the condition in which complainant found him, and his note on Clark, or its value, restored.

The injunction should have been dissolved on Clark's answer:

1. Because he is an innocent purchaser, for a valuable consideration, without notice. 1 *Story Eq.* §409. 3 *Kelly*, 446.

2. Because the allegation of fraud and concealment is fully and distinctly denied by the answer.

H. L. Benning, for defendant.

I. As to the demurrer, this was well overruled, because—

1. The holder of a complete equitable title to land has such an interest in the land as is bound by a judgment against him. *Pitts vs. Bullard*, 3 *Kelly*, 5.

2. And to sell land so incumbered is a fraud upon the purchaser, particularly if the vendor conceals the incumbrance. 1 *Story's Eq.* §§208, 209. Such as will justify a rescission of the sale. 2 *Story's Eq.* §§694, 695, 695, *a*.

3. Moreover, if the purchaser of land cannot get a good title

to any material part of it, he may rescind the whole contract at his pleasure. 1 *Sug. Ven.* 361, '2, '3.   3 *Kelly*, 459, '60.   Or he may, in many cases, elect to take the portion of the land to which he can get a good title, and rescind the contract as to the residue. *Ib.*

4. That there was a covenant of warranty does not alter the case, for—

First, a covenant of warranty is no more an equitable bar, than is a bond for titles, which this Court has decided to be none.   3 *Kelly*, 459, '60.

Secondly, Cleghorn not having been evicted, but only *fearing* it, cannot as yet plead a breach of the warranty against the suits and the notes for the purchase money, even assuming such a plea to be allowable under any circumstances; and to suffer judgments to go against him will be to incur irreparable loss, as Clark lives out of the State and has no property in it.

Thirdly, because a Court of Law cannot measure the damages for a breach of this warranty, seeing that a part of the land was incumbered and a part not, whereas the whole land was purchased as a single parcel and for a solid price.

Fourthly, because the Court will not compel a purchaser to take a defective or doubtful title.   2 *P. Wms.* 198.   1 *Br. Ch. Rep.* 74.   4 *Russ.* 1.   4 *Ib.* 374.   10 *Sim.* 444.   7 *Beav.* 546.

II. And as to the motion to dissolve the injunction, that was properly refused, because the answer did not "plainly and distinctly deny the facts and circumstances upon which the equity of the bill is based."   3 *Kelly*, 445.   1 *Ib.* 9.

*By the Court.*—WARNER, J. delivering the opinion.

Two grounds of error are assigned upon the record in this case, to the judgment of the Court below.

First, because the Court overruled the demurrer to the complainant's bill.

Second, because the Court refused to dissolve the injunction on the coming in of the answers of Morris and Clark.

[1.] With regard to the first ground of error, we are of the opinion the demurrer was properly overruled.   The plaintiff in error insists that Cleghorn's remedy on the covenants of his deed affords him ample protection, and that a Court of Equity will not

VOL. VI.      29

interfere to grant relief. If the bill disclosed nothing more than that a title, with a covenant of warranty, had been made by the vendor to the vendee, in the absence of any fraud or other equitable circumstance, the argument would be entitled to consideration; but here, the complainant alleges that the vendor resides without the limits of the State, and has no property, to his knowledge, within the State. This is an equitable circumstance which, in our judgment, entitles the complainant to maintain his bill, when taken in connexion with the other allegations. The remedy on the covenant in the deed, against a *non-resident* who has no property in the State, would, to say the least, be very inadequate.

The main ground of the complainant's equity is, that the land purchased by him of Clark, the vendor, is subject to judgments obtained against Rousseau, who, it is alleged, paid the purchase money for the land, although he never had a title thereto in his own name, but that the same was held *in trust* for his benefit by those from whom Clark derived his title, and that the land has been levied on to satisfy judgments against Rousseau, and claimed by the complainant, which he fears will be sold for the payment of the judgments so obtained against Rousseau, of older date than his title from Clark. The object of the complainant's bill is, to be protected against the alleged incumbrance upon the property, and to enjoin the defendants from collecting the balance of the unpaid purchase money therefor.

[2.] In *Moore vs. Ferrell et al.* (1 *Kelly,* 7,) this Court held, where the answer plainly and distinctly denies the facts and circumstances upon which the equity of the bill is based, the injunction will be dissolved. Now, here, the equity upon which the complainant's bill is based, is the alleged *trust* existing for the benefit of Rousseau, the judgment debtor, which it is feared by the complainant, will make the land subject to his debts. The answer of Clark, who conveyed to the complainant, not only alleges he was a purchaser of the land, without any notice of the trust, but denies the existence of any trust. The answer of Morris admits that he contracted at one time with Rousseau for one half the land, but denies that Rousseau ever paid any thing for it, and that the contract was rescinded before he sold it to Clark. We think the answers of Morris and Clark are full and satisfactory, and deny the existence of any *trust* in favor of Rousseau, which can operate as an incumbrance on the property purchased by

the complainant from Clark, and now in possession of the complainant, and that the Court below ought to have sustained the motion to dissolve the injunction.

Let the judgment of the Court below be reversed.